1
2
3
4
5
6
7
8            IN THE UNITED STATES DISTRICT COURT

9           FOR THE EASTERN DISTRICT OF CALIFORNIA

10   TIMOTHY LEON FOY, JR.,

11            Petitioner,                    2: 10 - cv - 2322 - TJB

12      vs.

13   RAUL LOPEZ,

14            Respondent.              ORDER, FINDINGS AND

15                                      RECOMMENDATIONS

16   _____/

17                       I.  INTRODUCTION

18        Petitioner is a state prisoner and is proceeding *pro se* with a petition for writ of habeas

19   corpus pursuant to 28 U.S.C. § 2254.  Petitioner was convicted by a jury of several sexual

20   offenses, including forcible oral copulation and rape.  The jury also found that Petitioner

21   kidnapped the victim and that that movement substantially increased the risk of harm.  Petitioner

22   is currently serving a sentence of fifty-five years to life imprisonment for his crimes.  Petitioner

23   raises several claims in his federal habeas petition; specifically:  (1) improper exclusion of

24   impeachment evidence against a witness ("Claim I"); (2) Petitioner's right to a jury trial was

25   violated when the court did not submit the issue of whether he committed the sex offenses on

26   "different occasions" to the jury ("Claim II"); (3) improper admission of evidence when the court

1

admitted evidence that Petitioner committed a sexual offense three months after the charged

offense ("Claim III"); ineffective assistance of counsel ("Claim IV"); (5) violation of due process

in imposing a restitution fine ("Claim V"); and (6) ineffective assistance of appellate counsel

("Claim VI").  For the following reasons, the habeas petition should be denied.

## II.  FACTUAL[1] AND PROCEDURAL BACKGROUND

The victim, O, testified that in June 2003 she was using marijuana and crack cocaine.  At times she prostituted herself, and she had two subsequent convictions for prostitution, in 2004 and 2005.

On June 14, 2003, O. called 911 to report that she had been raped, and that call was played at trial.  She told the operator that a man held her hostage for a couple of hours, raped her, beat her, and hit her with a bottle, and she gave a description of the man.  She said she had seen him once before, and "everybody called him Green Eyes."  At trial, O. identified defendant as that man.

O. testified she had been walking home when defendant drove by and asked if she needed a ride; she said "Sure," and told him her home was a couple of blocks away.  When he said he had to make a stop and turned around, she asked to get out and he slapped her in the eye.  He stopped near Hagginwood Park and told her to get undressed and do what he said.  Whenever she was too slow to comply with his demands, he hit her in the head with a glass bottle, or scratched and choked her neck; he also bit her on the bottom. Photographs of these injuries were introduced into evidence at trial.

Defendant first asked for oral sex.  Over the duration of her ordeal, he forced O. to have oral sex "[a]bout two or three times."  He would have her go "back and forth" between oral sex and intercourse.  O. also testified that defendant had intercourse with her while she was on her knees "[t]wo or three times."  He also put a finger in her anus.

O. was taken to the UC Davis Medical Center, where she told peace officers that the man's nickname was "Green Eyes."  O. told a sexual assault nurse how she had been attacked, and the nurse testified O.'s explanation was consistent with the nurse's physical examination.  O. also told the nurse she had not had sex for five days before the attack.

In 2006, O. identified defendant's picture in a photographic lineup.

---

[1] The factual background is taken from the California Court of Appeal, Third Appellate District opinion on Petitioner's direct appeal dated July 13, 2009 and filed in this Court by Respondent as Exhibit 1 to his answer (hereinafter the "Slip Op.").

On cross-examination, O. testified she had seen defendant two to three times before, "when he was walking [.]"  On that night she left home about 10:00 p.m. to go to the store, and she was walking back home when he picked her up.  She had been using crack cocaine during that period, and had told the sexual assault nurse she had used it within 96 hours of her hospital examination.  O. answered "Yes" when she was asked, "Isn't it true back [on] June 14th of 2003 you were strolling?"  But she apparently interpreted this question to ask whether she was a prostitute during that general time period, because when she was twice asked whether she had been working as a prostitute "that night," she denied it.  O. admitted that she entered defendant's car voluntarily.

Former Sacramento Police Officer Adam Levesque testified he had been patrolling Del Paso Heights on June 14, 2003, when he was called to a location near Hagginwood Park in response to a rape report.  He found O. "crying and somewhat distraught" and she had visible injuries.

Retired Sacramento Police Detective Peter Willover learned in 2005 that the county DNA laboratory had matched samples from the attack on O. with defendant through the state DNA database.  He prepared a photographic lineup and showed it to O., and she identified defendant, stating "that's Green Eyes, the one who raped me and beat me with a bottle."  He showed defendant a picture of O. and defendant denied ever having seen her.  O. told detective Willover that since the rape she had seen defendant twice, once when he "tried to lure her into his vehicle again," and one other time.

DNA found on O's panties and in her vagina matched defendant's DNA, but some DNA on the panties was neither hers nor defendant's.

Another incident was presented to the jury to show defendant's propensity to commit forcible sex crimes.

A witness testified that on September 2, 2003, she saw a car driving the wrong way on Howe Avenue with its lights off and its horn honking, and it crashed into a rock.  A woman was screaming inside, and a man "came out, walked around the car, and ripped the girl out" and began hitting her and dragging her by the hair toward some bushes.  The woman was screaming, "no, no, no, no and just screaming at the top of her [lungs]."  The man ran off.  The woman panicked and her nylons were torn.

The victim in that incident, L., testified defendant was her "husband's brother's stepson" and she had seem him only once or twice in the 10-15 years before the 2003 incident.  Defendant called her husband said he needed a ride.  She picked defendant up around 1:00 a.m. (or maybe later than morning) and followed the

directions he gave her.  When he made some sort of sexual comment, she cut off the conversation.  He began to choke her and told her to get into the backseat.  Defendant managed to take her panties off.  L. managed to drive off, with him still choking her, until she "went up to the rock" at a gas station.  She struggled as he choked her, then pulled her hair and dragged her by some bushes.  Eventually, he ran off.

The defense closing argument conceded defendant had sex with O., but argued someone else, either an angry customer or her pimp, may have beaten her.  The defense argued that O. was a liar, that she had been "strolling" as a prostitute that night, and that she had lied about not having sex with anyone else recently, as evidenced by the third party DNA on her panties.

(Slip Op. at p. 2-5.)

Petitioner was convicted of three counts of forcible oral copulation, three counts of rape and one count of sexual penetration by force.  Petitioner appealed to the California Court of Appeal and raised Claims I and II along with a claim that the evidence was insufficient to support more than two counts of forced oral copulation.  The Court of Appeal agreed with Petitioner's argument that there was insufficient evidence to support a third forced oral copulation count.  It reversed the conviction on that count so that Petitioner now has a fifty-five year to life imprisonment sentence.  It affirmed the judgment in all other respects.

Petitioner then filed a petition for review which raised Claims I and II.  The California Supreme Court summarily denied the petition for review in September 2009.

In February 2010, Petitioner filed a state habeas petition in the California Supreme Court. That state habeas petition raised Claims III, IV, V and VI.  The California Supreme Court summarily denied the state habeas petition in July 2010.

Petitioner filed the instant federal habeas petition in August 2010.  Respondent filed an answer in February 2011.  Petitioner filed a traverse in March 2011.

III.  APPLICABLE LAW FOR FEDERAL HABEAS CORPUS

An application for writ of habeas corpus by a person in custody under judgment of a state court can only be granted for violations of the Constitution or laws of the United States.  <u>See</u> 28

4

1   U.S.C. § 2254(a); see also Peltier v. Wright, 15 F.3d 860, 861 (9th Cir. 1994); Middleton v.

2   Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v. Isaac, 456 U.S. 107, 119 (1982)).

3   Petitioner filed this petition for writ of habeas corpus after April 24, 1996, thus the Antiterrorism

4   and Effective Death Penalty Act of 1996 ("AEDPA") applies.  See Lindh v. Murphy, 521 U.S.

5   320, 326 (1997).  Under AEDPA, federal habeas corpus relief is not available for any claim

6   decided on the merits in the state court proceedings unless the state court's adjudication of the

7   claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of,

8   clearly established federal law, as determined by the Supreme Court of the United States; or (2)

9   resulted in a decision that was based on an unreasonable determination of the facts in light of the

10  evidence presented in state court.  See 28 U.S.C. 2254(d).  Where a state court provides no

11  reasoning to support its conclusion, a federal habeas court independently reviews the record to

12  determine whether the state court was objectively unreasonable in its application of clearly

13  established federal law.  See Stanley v. Cullen, 633 F.3d 852, 860 (9th Cir. 2011).

14          As a threshold matter, this Court must "first decide what constitutes 'clearly established

15  Federal law, as determined by the Supreme Court of the United States.'"  Lockyer v. Andrade,

16  538 U.S. 63, 71 (2003) (quoting 28 U.S.C. § 2254(d)(1)).  "'[C]learly established federal law'

17  under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court

18  at the time the state court renders its decision.'"  Id. (citations omitted).  Under the unreasonable

19  application clause, a federal habeas court making the unreasonable application inquiry should ask

20  whether the state court's application of clearly established federal law was "objectively

21  unreasonable."  See Williams v. Taylor, 529 U.S. 362, 409 (2000).  Thus, "a federal court may

22  not issue the writ simply because the court concludes in its independent judgment that the

23  relevant state court decision applied clearly established federal law erroneously or incorrectly.

24  Rather, that application must also be unreasonable."  Id. at 411.  Although only Supreme Court

25  law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in

26  determining whether a state court decision is an objectively unreasonable application of clearly

5

established federal law.  See Clark v. Murphy, 331 F.3d 1062, 1070 (9th Cir. 2003) ("While only

the Supreme Court's precedents are binding . . . and only those precedents need be reasonably

applied, we may look for guidance to circuit precedents.").

With respect to Claims I and II, the last reasoned decision was from the Court of Appeal

on direct appeal.  Petitioner raised Claims III-VI in his state habeas petition which was

summarily denied by the California Supreme Court.  Thus, as to those four claims, the record

will be independently reviewed to determine whether the state court was objectively

unreasonable in its application of clearly established federal law.

IV.  ANALYSIS OF PETITIONER'S CLAIMS

A.  Claim I

In Claim I, Petitioner argues that the trial court erred and violated his Constitutional rights

when it prevented him from introducing evidence of O.'s sexual conduct for impeachment

purposes.  The California Court of Appeal analyzed this Claim on direct appeal and stated the

following:

> Defendant contends the trial court wrongly excluded impeachment
> evidence.  We conclude no prejudicial error occurred.
>
> Defendant moved in limine to introduce evidence of O.'s conduct
> subsequent to the charged crimes.  An attached affidavit contained
> an offer of proof that two times in 2004 (January and September)
> and two times in 2005 (January and June), O. proposed acts of
> prostitution to undercover peace officers while working as a
> prostitute.  Two of the four incidents resulted in prostitution
> convictions.  In three of the incidents, O. entered the officer's car,
> offered to orally copulate the officer and advised him where to
> drive to complete the acts.  The proposed relevance was that this
> evidence would tend to negate defendant's intent to commit rape,
> and tend to show he did not kidnap her, but merely drove her to a
> location to complete acts of prostitution, which was her normal
> method of working as a prostitute.  Although not stated in the
> motion, at the preliminary hearing O. denied she provided oral
> copulation as a service in June 2003.
>
> The People sought to exclude this evidence under the rape shield
> laws.  (Evid. Code, §§ 782, 1103, subd. (c).)  "A defendant
> generally cannot question a sexual assault victim about his or her
> prior sexual activity.  [Citation.]  However, a limited exception is

6

applicable if the victim's prior sexual history is relevant to the victim's credibility. [Citations.] . . . Evidence Code section 782 is designed to protect victims of molestation from 'embarrassing personal disclosures' unless the defense is able to show in advance that the victim's sexual conduct is relevant to the victim's credibility. [Citation.] If, after review, 'the court finds the evidence relevant and not inadmissible pursuant to Evidence Code section 352, it may make an order stating what evidence may be introduced and the nature of the questions permitted.'" (<u>People v. Bautista</u> (2008) 163 Cal.App.4th 762, 781-782 (<u>Bautista</u>).)

At the hearing, the People conceded the two prostitution *convictions* could be used to impeach O., but not the underlying conduct. The defense conceded that "under the rape shield statute . . . we can't bring in these prior acts to show that it was for consent[,]" but argued they could be used to show that the "transport was not a kidnap."

The trial court excluded the evidence of O.'s sexual conduct, but allowed the two prostitution convictions to be used for impeachment, stating: "I think we have to balance [Evidence Code section] 1103 and impeachment of a witness. [¶] And if the conduct is admitted, then what we have done is[,] in the name of impeachment[,] just abrogated [section] 1103."

Defendant, in part, faults the trial court for not conducting an evidentiary hearing at which O. would have testified. A hearing is warranted as follows: "If the court finds that the offer of proof is sufficient, the court shall order a hearing out of the presence of the jury, if any, and at the hearing allow the questioning of the complaining witness regarding the offer of proof made by the defendant." (Evid. Code, § 782, subd. (a)(3).) Under the statutory scheme, the trial court first accepts "the offer of proof as true. He [or she] then determines whether, if the evidence is as the defendant claims, it is relevant and if relevant whether its probative value is outweighed by the probability of undue prejudice or the undue consumption of trial time. (Evid. Code, § 352.) Only if the judge determines both questions in favor of admissibility is the offer of proof 'sufficient.' Only if it is 'sufficient' is the trial court required to conduct the hearing to determine if the offer truly recites what the evidence will be." (<u>People v. Blackburn</u> (1976) 56 Cal.App.3d 685, 691-692.) Thus, the purpose of the hearing is to verify the accuracy of the offer of proof. In this case, there was no dispute about the accuracy of the defense affidavit. On appeal, defendant does not explain how a hearing at which O. testified would have bolstered his theory of admissibility. Nothing in the record suggests that having O. testify would have added relevant information to the trial court's ultimate decision to exclude the evidence of her subsequent sexual conduct, apart from the prostitution convictions themselves.

In connection with this claim of procedural error, defendant inappropriately seizes on a comment by the Attorney General.  At the end of the Attorney General's argument, he contends that *if we find the trial court erred on the merits of its ruling*, instead of reversing outright, we should remand for an evidentiary hearing to test the offer of proof.  Defendant characterizes this as a concession of procedural error.  We do not view the Attorney General's statement as a concession of procedural error.  It is merely an alternative, prophylactic, argument.

Defendant also contends the trial court erred procedurally by failing to exercise its discretion in determining the admissibility of sexual conduct evidence.  On the record, after considering the written submissions and oral arguments of the parties, the trial court stated that allowing sexual conduct evidence beyond O.'s prostitution convictions would "abrogate[ ]" the rape shield laws.  Defendant interprets this to mean that the trial court failed to engage in the evidentiary weighing process contemplated by that scheme.  We disagree.  The People's opposition papers quoted Evidence Code section 352 and explained its relevance in making a section 782 determination, in part arguing that the evidence "is of little probative value and is highly prejudicial."  And, as quoted *ante*, the trial court stated:  "I think we have to balance [Evidence Code section] 1103 and impeachment of a witness."  [¶]  And if the conduct is admitted, then what we have done is[,] in the name of impeachment[,] just abrogated [section] 1103."  Thus, the trial court explicitly referred to the need to "balance."  It is clear that the trial court was not stating that such evidence would never be admissible, it was stating it was not admissible for lack of an adequate showing.  The fact the trial court did not place n the record the details of its analysis does not mean it did not balance the appropriate factors, as defendant surmises.  (See People v. Waidla (2000) 22 Cal.4th 690, 724, fn. 6.)

On the merits of the trial court's ruling, defendant states the evidence was relevant to the kidnap allegations "because it would have impeached [the victim's testimony that she did not willingly travel in [defendant's] car to the park" and instead would tend to show she accompanied defendant there voluntarily, to complete an act of prostitution.  In the reply brief, defendant emphasizes the evidence was to be introduced "to demonstrate the complaining witness was willing to get in cars at night with strangers, in the area of the charged incident, for sex."

"A trial court's ruling on the admissibility of prior sexual conduct will be overturned on appeal only if appellant can show an abuse of discretion."  (People v. Chandler (1997) 56 Cal.App.4th 703, 711 (Chandler).)  The credibility exception should not "impermissibly encroach upon the rule itself and become a 'back door' for admitting otherwise inadmissible evidence."  (People v. Rioz (1984) 161 Cal.App.3d 905, 9191; see id. at p. 918 (Rioz).)  The

trial court's ruling in part allowed the introduction of O.'s
prostitution convictions to impeach her.  The trial court could
rationally conclude the details of how O. engaged in prostitution
would not significantly change the jury's view of her credibility,
but would only further deprecate her character.

Further, the trial court could conclude the circumstances of the
rape, involving violence with objective corroboration of injuries,
and fresh complaints, obviated the defense claim.  This case is
strikingly like an example discussed in another case, as
follows:  "A defendant charged with forcible rape [offers] to prove
that the complaining witness, a convicted prostitute, agreed to have
sex with the defendant for money and charged him with rape to get
even with him when he refused to pay her.  However, not only has
the complaining witness denied that the sexual activity with the
defendant was consensual, but other evidence establishes without
contradiction that the complaining witness was beaten in
connection with the event.  Given the potentially prejudicial impact
of a prostitution conviction on the victim's testimony that she did
not consent, the trial court, in the exercise of its discretion, may
determine that the injuries suffered by the victim are wholly
inconsistent with the defendant's offer of proof and either reject the
sufficiency of the offer of proof in the first instance or exclude
evidence of the prostitution conviction, after a hearing, pursuant to
Evidence Code section 352."  (Rioz, supra 161 Cal.App.3d at pp.
916-917.)

Here, as indicated, the trial court *allowed* the prostitution
convictions into evidence, unlike the example just described.  The
victim's corroborated injuries and fresh complaints are not
consistent with the defense view that the sex was consensual.  The
defense speculated that someone else beat the victim up after she
and defendant engaged in consensual prostitution, but there was no
*evidence* supporting that theory and the evidence excluded by the
trial court's ruling would not have changed that calculus.

Defendant cites authority for the proposition that the evidence was
admissible because the charged offenses included oral copulation.
The case cited states in part:  "We do not, here, hold that in every
rape case where the prosecutrix is a prostitute, evidence of that fact
must be admitted to show consent.  The official records offered
here show, not only that the woman was a prostitute, but:  (1) that,
in pursuit of her profession, she walked the night streets, in this
very area to solicit customers; and (2) that, in the practice of that
profession, she not only engaged in normal intercourse, but that she
specialized in oral copulation.  The first fact is here of special
significance in that it casts light on the woman's story that when
she was walking to the bus stop because the 'friend' who had
driven her from the friend's home had callously refused to drive
two blocks further, to the bus stop because the friend had, at 11:30
p.m., an urgent appointment at home.  The second fact is also very

9

significant in that it tends to support the defense claim that the oral copulation, on which count IV was based, was voluntarily engaged in by the woman.  These special factors, we conclude, made it an abuse of discretion to deny the disclosure motion."  (People v. Varona (1983) 143 Cal.App.3d 566, 569-570.)  Varona's view that oral copulation was a special factor justifying introduction of sexual conduct evidence is stale.  Varona was decided just a few years after *consensual* oral copulation had been decriminalized, in 1976.  (See People v. Rossi (1976) 18 Cal.3d 295, 298.)  It is not wholly unremarkable that a prostitute, or an unpaid sexual partner, would engaged in oral copulation.  But Varona also noted that the evidence showed the prosecutrix ostensibly plied her trade in the very area in which the alleged crime occurred.  (Varona, supra, at pp. 569-570.)  Arguably, the same can be said here – that the evidence the prostitution cases arose from conduct in the vicinity of the charged crimes would bolster the claim that the victim lied about what she was doing that night.

Assuming this view demonstrates a misapplication of legal standards by the trial court and the evidence should have been introduced, any error was harmless.  The jury already learned the victim was a prostitute and had used crack cocaine in the days before the alleged attack.  Further details about her method of prostitution would not have changed its view of her veracity.  (See Chandler, supra, 56 Cal.App.4th at pp. 711-712 [jury learned victim engaged in sex for drugs, fact jury did not learn how often she did so harmless].)  Arguably, the defense evidence may have convinced the jury she lied about why she got into defendant's car, but she testified she did so voluntarily, and defendant was not charged with participating in an act of prostitution, he was charged with forcible sex offenses accomplished by a savage beating.  Defendant fails to explain why, even if the jury thought the victim lied about why she got into the car, the jury would think she lied about how she was assaulted or who assaulted her.

Defendant speculates that the jury may have found the victim and defendant had consensual sex and then got into an argument in which he beat her, or that the victim may have been beaten by some other man.  As indicated above, there is no evidence in the record supporting these theories, and the excluded evidence would not change this evidentiary gap.

Defendant contends the trial court's evidentiary ruling undermined his ability to raise a defense that he reasonably believed the victim consented.  (See People v. Mayberry (1975) 15 Cal.3d 143 (Mayberry).)  We disagree.

Although a defendant need not testify in order to raise a Mayberry defense, there must be evidence in the record from which the jury could rationally find the defendant acted with a reasonable belief in consent.  (See People v. Simmons (1989) 213 Cal.App.3d 573,

10

579-580; People v. Anderson (1983) 144 Cal.App.3d 55, 59-60, 62 [witness to incident did not perceive force].)  Such a defense requires the defendant to subjectively believe the victim consented, by showing "'evidence of the victim's equivocal conduct on the basis of which he erroneously believed there was consent[,]'" and, objectively, "'that belief must be formed under circumstances society will tolerate as reasonable in order for the defendant to have adduced substantial evidence giving rise to a Mayberry instruction.'"  (People v. Dominguez (2006) 39 Cal.4th 1141, 1148, quoting People v. Williams (1992) 4 Cal.4th 354, 360-361.)  A Mayberry instruction is warranted only where there is evidence from which the jury could rationally find a reasonable doubt based on the mistake about consent.  (People v. Rhoades (1987) 193 Cal.App.3d 1362, 1368-1369; People v. Romero (1985) 171 Cal.App.3d 1149, 1156 ["a Mayberry defense cannot be raised without some evidence that the victim acted in a manner that reasonably could be misunderstood by the defendant"].)  There was no such evidence in this case.  O's testimony of abuse showed her struggling and defendant responding with violence to force her to submit, a description incompatible with mistaken consent.  The trial court's ruling did not exclude evidence from which the jury could rationally have found defendant *mistakenly* thought the victim consented.

Finally, defendant contends the ruling violated his federal rights to due process and to confront witnesses, and therefore any error must be deemed prejudicial unless it was harmless beyond a reasonable doubt.  We disagree.  Generally, the neutral application of state law evidentiary rules does not violate a defendant's right to present a defense.  (People v. Fudge (1994) 7 Cal.4th 1075, 1102-1103.)  More specifically, "A trial court's limitation on cross-examination pertaining to the credibility of a witness does not violate the confrontation clause unless a reasonable jury might have received a significantly different impression of the witness's credibility had the excluded cross-examination been permitted."  (People v. Quartermain (1997) 16 Cal.4th 600, 623-624; see Bautista, supra 163 Cal.App.4th at p. 783.)  Here, as indicated, the jury learned from the victim's testimony that she was a drug-abusing prostitute at the time of the attack, and that she continued to work as a prostitute thereafter, as shown by her two subsequent prostitution convictions.  She was not portrayed as a person of chaste character.

(Slip Op. at p. 6-15.)

At the outset, it is worth noting that, "[i]t is not the province of a federal habeas court to reexamine state court determinations on state law questions."  Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).  Because federal habeas relief does not lie for state law errors, a state court's evidentiary ruling is grounds for federal habeas relief if it renders the state proceedings so

1    fundamentally unfair as to violate due process.  See Drayden v. White, 232 F.3d 704, 710 (9th

2    Cir. 2000).  In assessing whether the exclusion of evidence at a state trial violated a petitioner's

3    due process rights, a federal habeas court examines "the probative value of the evidence on the

4    central issue; its reliability; whether it is capable of evaluation by the trier of fact; whether it is

5    the sole evidence on the issue or merely cumulative; and whether it constitutes a major part of the

6    attempted defense."  Id. at 711 (internal quotation marks and citation omitted).  A "defendant's

7    right to present evidence is not absolute; he must comply with established rules of evidence and

8    procedure."  Carriger v. Lewis, 971 F.2d 329, 333 (9th Cir. 1992).  A criminal defendant "'does

9    not have an unfettered right to offer [evidence] that is incompetent, privileged, or otherwise

10   inadmissible under standard rules of evidence.'"  Montana v. Egelhoff, 518 U.S. 37, 42 (1996)

11   (quoting Taylor v. Illinois, 484 U.S. 400, 410 (1988)).

12           Nevertheless, criminal defendants have a constitutional right under the Sixth Amendment

13   to present a defense; this right is a "fundamental element of due process of law."  See

14   Washington v. Texas, 388 U.S. 14, 19 (1967).  However, this constitutional right to present a

15   defense is not absolute.  See Alcala v. Woodford, 334 F.3d 862, 877 (9th Cir. 2003).  A state law

16   justification for exclusion of evidence does not abridge a defendant's right to present a defense

17   unless it is "arbitrary and disproportionate" and "infringe[s] upon a weighty interest of the

18   accused."  United States v. Scheffer, 523 U.S. 303, 308 (1998).

19           The right to confront witnesses includes the right to cross-examine adverse witnesses to

20   attack their general credibility or show their possible bias or self-interest in testifying.  See Olden

21   v. Kentucky, 488 U.S. 227, 231 (1988).  A Confrontation Clause violation occurs when a

22   defendant is prevented from investigating "a prototypical form of bias" if a reasonable jury might

23   have received a significantly different impression of the witness's credibility had defendant's

24   counsel been permitted to pursue his proposed line of cross-examination.  See Delaware v. Van

25   Arsdall, 475 U.S. 673, 680 (1986).  Nevertheless, "[t]rial judges retain wide latitude insofar as

26   the Confrontation Clause is concerned" and may impose limitations on cross-examination that

1  are "reasonable" and are not arbitrary or disproportionate to the purposes they are designed to

2  serve.  See id. at 679; see also Michigan v. Lucas, 500 U.S. 145, 149 (1991).  In Lucas, the

3  Supreme Court explained in analyzing Michigan's rape shield statute that:

> To the extent that it operates to prevent a criminal defendant from
> presenting relevant evidence, the defendant's ability to confront
> adverse witnesses and present a defense is diminished.  This does
> not necessarily render the statute unconstitutional.  "[T]he right to
> present relevant testimony is not without limitation.  The right
> 'may, in appropriate cases, bow to accommodate other legitimate
> interests in the criminal trial process.

8  500 U.S. at 149.

9          In Wood v. Alaska, 957 F.2d 1544, 1549-50 (9th Cir. 1992), the Ninth Circuit stated a

10  two-part inquiry in determining whether a petitioner's Sixth Amendment rights were violated.

11  The first inquiry is whether the evidence is relevant.  See id. at 1550.  If the evidence is relevant,

12  the next inquiry is whether other legitimate interests outweigh the defendant's interest in

13  presenting the evidence.  See id.  In Wood, the Ninth Circuit explained that there will not be a

14  Sixth Amendment violation "so long as the jury has 'sufficient information' upon which to assess

15  the credibility of a witness."  Id.

16          Additionally, the denial of a defendant's opportunity to impeach a witness is subject to

17  harmless error analysis.  See Van Arsdall, 475 U.S. at 684; Woods v. Sinclair, 655 F.3d 886, 901

18  (9th Cir. 2011) ("Violation of the Confrontation Clause, however, is subject to harmless-error

19  analysis.").  Thus, a petitioner is not entitled to relief unless he can establish that the trial court's

20  error "had substantial and injurious effect or influence in determining the jury's verdict."  See

21  Brecht v. Abrahamson, 507 U.S. 619, 637 (1993).

22          Petitioner failed to show that he was deprived of a fair opportunity to cross-examine and

23  impeach the victim.  The trial court did allow the evidence of the victim's two prior convictions

24  for prostitution to be admitted at trial.  (See Reporter's Tr. at p. 20.)  During the trial, the victim

25  admitted that she had been convicted of prostitution in 2004 and 2005.  (See id. at p. 83.)  As

26  noted by the California Court of Appeal, the trial court balanced relevant interests in making its

1   decision by stating: "I think we have to balance 1103 and impeachment of a witness. [¶] And if

2   the conduct is admitted, then what we have done is in the name of impeachment just abrogated

3   1103. And I don't think that is the intent of the legislature nor the court's in deciding cases that

4   have been decided in this area." (See id. at p. 17.) Under these circumstances, Petitioner was not

5   deprived of his right to confront a witness against him. See, e.g., Anderson v. Morrow, 371 F.3d

6   1027, 1030 (9th Cir. 2004) (no due process or confrontation clause violation where trial court

7   admitted some evidence of the victim's prior sexual experience but, pursuant to Oregon's rape

8   shield law, excluded other evidence after balancing relevance against the victim's privacy); Pack

9   v. Page, 147 F.3d 586, 588 (7th Cir. 1998) (exclusion of evidence not unreasonable application

10  of federal law where the court "did not suppose that a rape shield statute always prevails over a

11  defendant's interest in undermining the testimony of his accuser," but "applied a balancing

12  approach under which the trial judge had discretion to weigh the competing interests").

13          Even assuming that the exclusion of the victim's prior sexual conduct evidence was

14  improper, any purported error would be deemed harmless under these circumstances. As

15  previously indicated, the jury heard testimony about the victim's prior convictions for

16  prostitution. Therefore, the jury was aware that the victim had prostituted herself to support

17  Petitioner's defense that the sex arose from a prostitute-client transaction. Furthermore, a nurse

18  who examined the victim testified that the exam she "conducted was consistent with the history

19  of sexual assault," as stated to her by the victim. (See Reporter's Tr. at p. 229.) Thus, the

20  exclusion of the evidence of the victim's other sexual conduct history in this case would not have

21  had a "substantial and injurious" effect on the jury's verdict. See Brecht, 507 U.S. at 637. For

22  the foregoing reasons, Claim I should be denied.

23          B.  Claim II

24          In Claim II, Petitioner argues that the trial court violated his right to a jury trial when it

25  did not submit to the jury the issue of whether Petitioner committed the sex offenses on separate

26  occasions giving rise to the imposition of consecutive rather than concurrent sentences under

14

California law.  The California Court of Appeal analyzed this Claim on direct appeal and stated

the following:

> The kidnap findings triggered application of one strike sentencing, and defendant was sentenced to 25 years to life on count 4 (rape). (Pen. Code, § 667.61, subd. (a).  Count 5 (rape) was the principal determinate term and the trial court imposed the six-year midterm. The trial court ordered full consecutive six-year sentences on the remaining counts, finding "that the defendant did have a reasonable opportunity to reflect on his actions and, nevertheless, resumed sexually assaultive behavior."  This resulted in a determinate term of 36[2] years, apart from the indeterminate term of 25 years to life.
>
> Defendant contends imposition of full-term consecutive sentencing was improper because the fact relied on by the trial court, whether defendant continued to commit assaults despite an opportunity to reflect, was not determined to be true by the jury.  He relies on Apprendi v. New Jersey, (2000) 530 U.S. 466 [147 L.Ed.2d 435] (Apprendi) and related cases interpreting the Sixth Amendment.
>
> The Apprendi rule does not apply to the decision to impose consecutive sentences.  (Oregon v. Ice (2009) – U.S. –, [172 L.Ed.2d 517]; People v. Wilson (2008) 44 Cal.4th 758, 813; People v. Black (2007) 41 Cal.4th 799, 820-823; People v. Quintanilla (2009) 170 Cal.App.4th 406, 414; People v. Martinez (2008) 166 Cal.App.4th 1598, 1603-1606.)  Accordingly, we reject defendant's contention of Sixth Amendment error.

(Slip Op. at p. 18.)

California Penal Code § 667.6(d) mandates that:

> A full, separate and *consecutive term shall* be imposed for each violation of an offense specified in subdivision (e) if the crimes involve separate victims or involve the same victim on separate occasions.  In determining whether crimes against a single victim were committed on separate occasions under this subdivision, the court shall consider whether, between the commission of one sex crime and another, the defendant had a reasonable opportunity to reflect upon his or her actions and nevertheless resumed sexually assaultive behavior.  Neither the duration of time between crimes, nor whether or not the defendant lost or abandoned his or her opportunity to attack, shall be, in and of itself, determinative on the issue of whether the crimes in question occurred on separate

---

[2] As noted in supra Part II, the Court of Appeal struck one of Petitioner's forced oral copulation charges leaving him with a thirty year determinate sentence apart from the indeterminate term of twenty-five years to life imprisonment.

1      occasions.

2  Petitioner asserts that the issue of whether his crimes occurred on separate occasions for purposes

3  of deciding a consecutive rather than a concurrent sentence should have been submitted to the

4  jury rather than decided by the trial judge.  However, his Claim is foreclosed by the Supreme

5  Court's decision in <u>Oregon v. Ice</u>, 555 U.S. 160 (2009).  In <u>Ice</u>, the issue was whether the Sixth

6  Amendment mandates a jury determination of any fact declared necessary to impose consecutive

7  rather than concurrent sentences.  <u>See id.</u> at 163.  The Supreme Court declined to extend

8  <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000) and held that the Sixth Amendment does not

9  prohibit states from assigning to judges rather than juries the findings of facts necessary to

10  impose consecutive rather than concurrent sentences.  <u>See id.</u> at 164.  Based on the Supreme

11  Court's holding in <u>Ice</u>, Petitioner is not entitled to federal habeas relief on Claim II as he failed to

12  show that the state court unreasonably applied clearly established federal law.  Claim II should

13  therefore be denied.

14      III.  Claim III

15      In Claim III, Petitioner argues that the trial court violated his due process rights by

16  allowing the prosecution to admit evidence that Petitioner tried to commit a sexual crime a few

17  months after the charged crimes.  The facts related to this evidence was previously recited by the

18  California Court of Appeal in <u>supra</u> Part II when it discussed the testimony of L.

19      The Supreme Court has yet to rule on whether propensity evidence admitted in a criminal

20  trial pursuant to state law violates the Due Process Clause.  <u>See</u> <u>Estelle</u>, 502 U.S. at 75 n.5

21  ("[W]e express no opinion on whether state law would violate the Due Process Clause if it

22  permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime.").

23  Accordingly, since the Supreme Court has not clearly established that use of propensity evidence

24  in a criminal trial violates due process, a state court's decision on the matter cannot be contrary

25  to or an unreasonable application of Supreme Court precedent under AEDPA.  <u>See</u> <u>Alberni v.</u>

26  <u>McDaniel</u>, 458 F.3d 860, 866-67 (9th Cir. 2006) (denying due process claim upon the use of

1    propensity evidence for want of a "clearly established" rule from the Supreme Court); see also

2    Mejia v. Garcia, 534 F.3d 1036, 1046 (9th Cir. 2008).  Thus, Petitioner is not entitled to relief on

3    Claim IV to the extent he bases this Claim on the Due Process Clause.[3]

4         D.  Claim IV

5         In Claim IV, Petitioner argues that his trial counsel was ineffective for failing to object to

6    the testimony of L. "on the grounds that the testimony constituted inadmissible other crimes and

7    bad character evidence."

8         The Sixth Amendment guarantees effective assistance of counsel.  In Strickland v.

9    Washington, 466 U.S. 668 (1984), the Supreme Court articulated the test for demonstrating

10   ineffective assistance of counsel.  First, the petitioner must show that considering all the

11   circumstances, counsel's performance fell below an objective standard of reasonableness.  See id.

12   at 688.  Petitioner must identify the acts or omissions that are alleged not to have been the result

13   _____

14        [3] It is also worth noting that in Mejia the Ninth Circuit stated the following:

15             Our holding in United States v. LeMay, 260 F.3d 1018 (9th Cir.
              2001), supports our conclusion that admission of the propensity
16            evidence did not violate Mejia's due process rights.  In LeMay, on
              direct appeal rather than on collateral review, we upheld
17            introduction of evidence under Federal Rule of Evidence 414 –
              which is roughly analogous to California Evidence Rule 1108,
18            allowing former acts evidence with respect to allegations of child
              molestation – as being consistent with due process requirements.
19            We noted that the Rule 414 evidence must pass the requirements of
              Rules 402 and 403, the federal analogs to California Evidence Rule
20            352 under which Norma's testimony was admitted.  We reasoned
              that due process requires that admission of prejudicial evidence not
21            render a trial fundamentally unfair, which Rule 402, ensuring
              relevance, and Rule 403, guarding against overly prejudicial
22            evidence, together guarantee.  California Evidence Rule 352
              establishes a similar threshold for the propensity evidence
23            introduced at Mejia's trial, suggesting that under LeMay, Rule 352,
              like Federal Rules 402 and 403, safeguards due process and
24            protected Mejia's trial from fundamental unfairness.

25   Mejia, 534 F.3d at 1047 n.5.  Thus, even if the merits of this Claim could be reached with respect
     to a prospective due process violation, the Claim would still not merit federal habeas relief for
26   the reasons stated in Mejia.

of reasonable professional judgment.  See id. at 690.  The federal court must then determine

whether in light of all the circumstances, the identified acts or omissions were outside the range

of professional competent assistance.  See id.  "[C]ounsel is strongly presumed to have rendered

adequate assistance and made all significant decisions in the exercise of reasonable professional

judgment."  Id.

Second, a petitioner must affirmatively prove prejudice.  See id. at 693.  Prejudice is

found where "there is a reasonable probability that, but for counsel's unprofessional errors, the

result of the proceeding would have been different."  Id. at 694.  A reasonable probability is "a

probability sufficient to undermine the confidence in the outcome."  Id.  "The likelihood of a

different result must be substantial, not just conceivable."  Harrington v. Richter, __ U.S. __, 131

S.Ct 770, 792, 178 L.Ed.2d 624 (2011).  A reviewing court "need not determine whether

counsel's performance was deficient before examining the prejudice suffered by defendant as a

result of the alleged deficiencies . . . [i]f it is easier to dispose of an ineffectiveness claim on the

ground of lack of sufficient prejudice . . . that course should be followed."  Pizzuto v. Arave, 280

F.3d 949, 955 (9th Cir. 2002) (citing Strickland, 466 U.S. at 697).  When analyzing a claim for

ineffective assistance of counsel where a state court has issued a decision on the merits, a habeas

court's ability to grant the writ is limited by two "highly deferential" standards.  Premo v. Moore,

__ U.S. __, 131 S.Ct. 733, 740, 178 L.Ed.2d 649 (2011).  "When § 2254(d) applies the question

is not whether counsel's actions were reasonable.  The question is whether there is any

reasonable argument that counsel satisfied Strickland's deferential standard."  Id. (internal

quotation marks and citation omitted); see also Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)

("Under § 2254(d)'s 'unreasonable application' clause, a federal habeas court may not issue the

writ simply because that court concludes in its independent judgment that the state-court decision

applied Strickland incorrectly.  Rather, it is the habeas applicant's burden to show that the state

court applied Strickland to the facts of his case in an objectively unreasonable manner.")

(citations omitted).

Contrary to Petitioner's arguments, trial counsel did argue that the evidence should not be admitted as it constituted inadmissible other crimes and bad character evidence.  Petitioner's trial counsel filed a detailed opposition brief opposing the introduction of his uncharged acts of sexual violence against L.  (See Clerk's Tr. at p. 75-94.)  Among the arguments that trial counsel made in support of excluding this evidence was that the evidence should not be admitted to prove intent or to show a common design, plan or scheme.  Trial counsel also argued that the evidence should be excluded because it was being offered only to show that Petitioner had a "propensity" to engage in certain behavior.  (See id. at p. 79.)  In light of trial counsel's opposition to the admission of this "propensity" evidence as indicated in the record, Petitioner has failed to show that trial counsel's performance was objectively unreasonable.  Thus, Claim IV should be denied.

E.  Claim V

In Claim V, Petitioner argues that the trial court violated his due process rights when it imposed a restitution fine in the amount of $1,000 based on the assumption that Petitioner could pay the fine.  Petitioner raised this Claim in his state habeas petition to the California Supreme Court which was summarily denied.

The Ninth Circuit has stated that "§ 2254 does not confer jurisdiction over a state prisoner's in-custody challenge to a restitution order imposed as part of a criminal sentence." See Bailey v. Hill, 599 F.3d 976, 982 (9th Cir. 2010).  Thus, Claim V should be denied.

F.  Claim VI

In Claim VI, Petitioner argues that his direct appellate counsel was ineffective for failing to raise Claim III, IV and V on direct appeal.  The Strickland standard enunciated in supra Part IV.D applies to appellate counsel as well as to trial counsel.  See Smith v. Murray, 477 U.S. 527, 535-36 (1986).  Petitioner fails to show that appellate counsel's assistance fell outside the "wide range of professionally competent assistance," or that he suffered prejudice.  See Strickland, 466 U.S. at 688, 693-94.  First, the "weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy."  See Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir.

1989).  Petitioner's appellate counsel raised three issues on appeal, one of which was ultimately

successful and which struck one of Petitioner's convictions.  Second, Petitioner also failed to

show that he was prejudiced by appellate counsel's decision.  He failed to show to a reasonable

probability that the outcome of the proceeding would have been different had appellate counsel

raised these issues on direct appeal as Claims III, IV and V do not merit federal habeas relief for

the reasons discussed in supra Parts IV C., D. and E.  Additionally, it is worth noting that with

respect to appellate counsel's failure to raise Claim V on direct appeal, Petitioner failed to raise a

cognizable ineffective assistance of appellate counsel claim.  See also United States v. Thiele,

314 F.3d 399, 400 (9th Cir. 2002) (ineffective assistance of counsel claim based on counsel's

failure to challenge restitution in § 2255 motion not cognizable because such claims do not

challenge the validity or duration of confinement); Funk v. Uribe, Civ. No. 09-6753, 2011 WL

2939146, at * 7 (C.D. Cal. Feb. 16, 2011) ("Petitioner's challenge to his counsel's not to

challenge the trial court's restitution order fails because it is not cognizable on federal habeas

review.  Section 2254 provides that a federal court may entertain a habeas petition 'in behalf of a

person in custody pursuant to the judgment of a State court only on ground that he is in custody

in violation of the Constitution or laws or treaties of the United States.'  28 U.S.C. § 2254(a).

But as the Ninth Circuit has made clear, '§ 2254(a) does not confer jurisdiction over a state

prisoner's in-custody challenge to a restitution order imposed as part of a criminal sentence.")

(citations omitted), report and recommendation adopted by, 2011 WL 2939145 (C.D. Cal. July

20, 2011); Baker v. Yates, Civ. No. 09-3360, 2010 WL 1688868, at *2 (E.D. Cal. Apr. 26, 2010)

("Thiele's rejection of a claim of ineffective assistance of as an ulterior vehicle for challenging

an order of restitution applies with equal force in an action under § 2254.").  Therefore, Claim VI

should be denied.

## V.  REQUEST FOR AN EVIDENTIARY HEARING

Petitioner requests an evidentiary hearing on his petition in his traverse.  A court

presented with a request for an evidentiary hearing must first determine whether a factual basis

20

1  exists in the record to support petitioner's claims, and if not, whether an evidentiary hearing

2  "might be appropriate." <u>Baja v. Ducharme</u>, 187 F.3d 1075, 1078 (9th Cir. 1999); <u>see</u> <u>also</u> <u>Earp v.</u>

3  <u>Ornoski</u>, 431 F.3d 1158, 1166 (9th Cir. 2005).  A petitioner requesting an evidentiary hearing

4  must also demonstrate that he has presented a "colorable claim for relief." <u>Earp</u>, 431 F.3d at

5  1167 (citations omitted).  To show that a claim is "colorable," a petitioner is "required to allege

6  specific facts which, if true, would entitle him to relief." <u>Ortiz v. Stewart</u>, 149 F.3d 923, 934 (9th

7  Cir. 1998) (internal quotation marks and citation omitted).  In this case, an evidentiary hearing is

8  not warranted for the reasons stated in <u>supra</u> Part IV.  Petitioner failed to demonstrate that he has

9  a colorable claim for federal habeas relief.  Moreover, the Supreme Court has recently held that

10  federal habeas review under 28 U.S.C. § 2254(d)(1) "is limited to the record that was before the

11  state court that adjudicated the claim on the merits" and "that evidence introduced in federal

12  court has no bearing on" such review.  <u>Cullen v. Pinholster</u>, 131 S.Ct. 1388, 1398, 1400 (2011).

13  Thus, his request will be denied.

## VI.  ASSIGNMENT OF DISTRICT JUDGE

15        On October 8, 2010, the parties were ordered to state their decision regarding whether to

16  consent to have a Magistrate Judge conduct all of the proceedings in this case.  A review of the

17  docket indicates that neither party submitted its consent.  Therefore, the Clerk of Court shall be

18  ordered to assign this case to a United States District Judge in accordance with the Court's

19  general assignment plan.

## VII.  CONCLUSION

21        Accordingly, IT IS HEREBY ORDERED that:

22    1.      Petitioner's request for an evidentiary hearing is DENIED; and

23    2.      The Clerk of Court shall assign this case to a United States District Judge in

24            accordance with the Court's general assignment plan.

25        For all of the foregoing reasons, IT IS RECOMMENDED that the petition for writ of

26  habeas corpus be DENIED.

1    These findings and recommendations are submitted to the United States District Judge

2    assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days

3    after being served with these findings and recommendations, any party may file written

4    objections with the court and serve a copy on all parties.  Such a document should be captioned

5    "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

6    shall be served and filed within seven days after service of the objections.  The parties are

7    advised that failure to file objections within the specified time may waive the right to appeal the

8    District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).  In any objections he

9    elects to file, Petitioner may address whether a certificate of appealability should issue in the

10   event he elects to file an appeal from the judgment in this case.  See Rule 11, Federal Rules

11   Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability

12   when it enters a final order adverse to the applicant).

13   DATED:  February 8, 2012

16   TIMOTHY J BOMMER
     UNITED STATES MAGISTRATE JUDGE

22